**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Auto-Owners Insurance Company,<br><br>    Plaintiff,<br>vs.<br><br>Allstate Fire and Casualty Insurance Company,<br><br>    Defendant. | No. CV-22-01689-PHX-SPL<br><br>**ORDER** |

  Before the Court are Defendant Allstate Fire and Casualty Insurance Company's ("Defendant") Motion for Summary Judgment (Doc. 20) and Plaintiff Auto-Owners Insurance Company's ("Plaintiff") Cross-Motion for Summary Judgment (Doc. 22). The Motions are fully briefed. (Docs. 20, 21, 22, 25, 28). The Court now rules as follows.[1]

**I. BACKGROUND**

  On October 4, 2022, Plaintiff initiated this action against Defendant. (Doc. 1). Plaintiff is a Michigan corporation providing automobile insurance to non-party Carol Moe ("Moe") who is an Arizona resident. (Doc. 8 ¶ 1; Doc. 21-1 at 88). Defendant is an Illinois corporation also providing automobile insurance to Moe. (Doc. 8 ¶ 2).

  On February 8, 2020, Moe suffered injuries during an accident that occurred in Arizona while she was operating her 2012 Yamaha golf cart (the "Yamaha"). (Doc. 21 at

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1

2; Doc. 21-1 at 88). Moe had an auto insurance policy with Plaintiff which described and rated the Yamaha and provided underinsured motorist ("UIM") coverage. (Doc. 21 at 1). Moe also had an auto insurance policy with Defendant which described and rated Moe's 2014 Ford Escape (the "Ford") and provided UIM coverage. (*Id.* at 1–2). Moe's policy with Defendant did *not* describe or rate the Yamaha. (Doc. 21 at 1; Doc. 21-1 at 54). After the accident, Moe submitted a UIM claim to Plaintiff, and Plaintiff paid the claim ($287,500.00) in full. (Doc. 21 at 2).

Plaintiff's policy—which insured the Yamaha—contained the following provision:

> **OTHER UNDERINSURED MOTORIST COVERAGE**
> If there is other Underinsured Motorist Coverage which applies, **we** will pay **our** share of the compensatory damages. . . . **Our** Share will be the ratio of **our** limit of liability to the total of all limits which apply. . . .
>
> The coverage extended to **automobiles you** do not own will be excess over any other coverage available to **you**.

(Doc. 21-1 at 30). Defendant's policy—which insured the Ford—contained the following:

> **Section 2 – Underinsured Motorists-Coverage SU**
>
> If a premium is shown on the Policy Declarations for **Underinsured Motorists Insurance, we** will pay damages which an **insured person** is legally entitled to recover from the owner or operator of an underinsured auto because of **bodily injury** sustained by an **insured person**.
>
> The **bodily injury** must be caused by an accident and arise out of the ownership, maintenance, or use of an underinsured auto. **We** will not pay any punitive or exemplary damages, fines or penalties under **Underinsured Motorists Insurance**. . . .
>
> **If There Is Other Insurance**
> If the insured person was occupying a vehicle **you** do not own, **Underinsured Motorists Insurance** under this policy will be excess over any other valid and collectible insurance available to the **insured person**, whether such other insurance is stated to be primary or excess. This means that when the **insured person** is legally entitled to recover damages in excess of the amount available under the other policy, **we** will pay up to the limit of liability of this policy, but only after all other collectible insurance has been exhausted and subject to the **Limit of Liability** provision of this policy.

2

(*Id.* at 80–81).

Plaintiff's Complaint alleges, under its sole claim for equitable contribution, that Defendant is responsible for half of the amount paid to Moe for her UIM claim. (Doc. 8 at 3). On March 10, 2023, Defendant moved for summary judgment. (Doc. 20). That same day, the parties provided a Joint Stipulated Statement of Facts. (Doc. 21). On April 10, 2023, Plaintiff filed a Response to Defendant's Motion and a Cross-Motion for Summary Judgment. (Doc. 22). On April 27, 2023, Defendant filed its Reply to Plaintiff's Response and Response to Plaintiff's Cross-Motion. (Doc. 25). Finally, on May 18, 2023, Plaintiff filed its Reply to Defendant's Response. (Doc. 28).

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "In reviewing cross-motions for summary judgment, each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (citation omitted). A court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). "[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996)).

## III. DISCUSSION

The parties each move for summary judgment on Plaintiff's sole claim for equitable contribution. The parties agree that no factual dispute exists and that the *only* remaining dispute is a question of law for the Court to decide: whether Defendant should be required to reimburse Plaintiff for fifty percent of the amount Plaintiff paid to Moe with respect to her UIM claim. Whether Defendant should be so required depends on whether its UIM

policy is "primary" with Plaintiff's or "excess".[2] Defendant asserts that Arizona law—specifically, A.R.S. § 28-4010(B)—applies and requires that Plaintiff's UIM policy be considered primary and Defendant's UIM policy be considered excess. (Doc. 20 at 1–2). Conversely, Plaintiff contends that § 28-4010(B) is inapplicable to the present case. (Doc. 22 at 6–9). Plaintiff argues that the parties' UIM policies—according to their own terms—provide that their respective coverages in this case are primary and that both parties should contribute equally to Moe's loss. (*Id.* at 1–2).

Statutory provisions affecting insurance policies "cannot be contracted away by either party." *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 96 Ariz. 399, 402 (1964) (citing *U.S. Fid. & Guar. Co. v. Hirsch*, 94 Ariz. 331 (1963)); *see also Higginbottom v. State*, 203 Ariz. 139, 142 (Ct. App. 2002) ("It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract. . . . Thus, where a contract is incompatible with a statute, the statute governs."); *State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179, 182 (1986) ("Insurers cannot avoid the sweep of the statute by simply rewriting their other insurance clauses; the legislative intent to allocate coverage cannot be so easily defeated by resourceful drafters."). Although Plaintiff insists this case should be resolved by simple interpretation and application of the parties' policies, the Court finds that it need not construe or even consider their policies if it finds that § 28-4010(B) applies. Thus, the Court will first determine whether the statute applies. Only if it does *not* will the Court construe the parties' policies by their plain and ordinary meaning to determine whether Defendant's coverage is primary or excess.

---

[2] "Primary insurance is coverage where 'under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability.' . . . An 'excess' or secondary insurance policy provides coverage where 'under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.'" *Am. Fam. Mut. Ins. Co. v. Cont'l Cas. Co.*, 200 Ariz. 119, 121 (Ct. App. 2001) (quoting *Archer-Daniels-Midland Co. v. Phx. Assurance Co. of N.Y.*, 975 F. Supp. 1129, 1134 (S.D. Ill. 1997)).

Section 28-4010(A) and (B) provide as follows:

> A. If two or more policies affording valid and collectible motor vehicle liability insurance apply to the same motor vehicle that is involved in an occurrence out of which a liability loss arises *and one of the policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles*, both of the following are conclusively presumed:
>
> > 1. If at the time of loss the motor vehicle is being operated by a person engaged in one of the businesses . . . the insurance afforded by the policy issued to the person engaged in the business is primary and the insurance afforded by any other policy is excess.
> >
> > 2. If at the time of loss the motor vehicle is being operated by a person other than a person described in this subsection, the insurance afforded by the policy issued to a person engaged in a business described in this subsection is excess over all other insurance available to the operator as a named insured or otherwise.
>
> B. Except as provided in subsection A, if two or more policies affording valid and collectible liability insurance apply to the same motor vehicle that is involved in an occurrence out of which a liability loss arises, it is conclusively presumed that the insurance afforded by that policy in which the *motor vehicle is described or rated* as an owned automobile is primary and the *insurance afforded by any other policy* or policies is excess.

A.R.S. § 28-4010(A)–(B) (emphasis added).[3] Courts have explained that Section B serves as the "general rule," while Section A provides the exception:

> [A.R.S. § 28-4010] governs the allocation of loss when two or more insurers issue motor vehicle liability policies covering the same loss. The statute creates conclusive presumptions as to which policy provides primary coverage and which policy provides excess coverage. *The general rule*, pursuant to A.R.S.

---

[3] The parties do not dispute that § 28-4010's reference to "liability insurance" *includes* UIM coverage. Indeed, Arizona law is clear that the statute's reference to liability insurance was intended to include "all types of coverage," including UIM coverage. *See Nationwide Mut. Ins. v. CNA Ins. Co.*, 159 Ariz. 368, 370–371 (Ct. App. 1989) (holding that § 28-4010 applies to uninsured motorist coverage).

> [§] 28-[4010](B), is that the primary policy is the one which describes and rates the vehicle as "owned"; any other policy provides excess insurance. However, *an exception to this general rule* is provided in A.R.S. [§] 28-[4010](A).

*John Deere Ins. Co. v. W. Am. Ins. Grp.*, 175 Ariz. 215, 216 (Ct. App. 1993) (emphasis added); *see also Allstate Ins. Co. v. Universal Underwriters, Inc.*, 199 Ariz. 261, 263 (Ct. App. 2000) (describing Section B as the "general rule").[4] In sum, § 28-4010 applies to determine primary versus excess coverage whenever two or more policies cover the same loss. Assuming that none of the policies cover an insured who is engaged in a motor vehicle business, Section B applies to determine which policy is primary and which is excess. If, however, one of the policies covers a named insured who works in such a business, then Section A applies to determine which policy is primary and which is excess.

Here, both Plaintiff and Defendant's UIM policies applied to Moe's accident involving the Yamaha. Likewise, Moe—the named insured under both policies—was *not* engaged in the motor vehicle business at any relevant time. Thus, it would appear that Section B should apply to determine whether Defendant's UIM coverage is primary or excess. Given that the Yamaha was described and rated by Moe's policy with Plaintiff but *not* in her policy with Defendant, Section B would seem to dictate that Plaintiff's coverage is primary and Defendant's coverage is excess. Indeed, this is exactly the summary judgment argument made by Defendant. (*See* Doc. 20 at 7–8).

Plaintiff argues that § 28-4010 is inapplicable to the present case. The Court is entirely unpersuaded, as Plaintiff's position is unsupported by the caselaw and other legal authority. Moreover, Plaintiff's argument blurs the line between Section A and Section B of § 28-4010, and otherwise obfuscates the true intent of the statute which has been

---

[4] *See also* Steven Plitt, Determining primary and excess coverages, *The Claim Adjuster's Automobile Liability Handbook* § 3:1 (Thomson Reuters ed., Nov. ed. 2022) (noting that most jurisdictions determine priority of policies "based upon the language of the respective policies' other insurance clauses," but that Arizona has "uniformly fixed primary and excess coverage priorities in automobile liability cases by enacting [A.R.S.] § 28-4010" which provides that "[i]n all cases except garage operations, the primary coverage follows the vehicle [and] [e]xcess coverage follows the non-owner operator").

conclusively and clearly set forth by Arizona courts. Plaintiff begins by asserting that the "primary purpose" of § 28-4010 is "to create conclusive presumptions as to 'which policy provides primary and which excess coverage when two or more policies cover the same motor vehicle loss and the named insured in one of the policies is engaged in the automobile business.'" (Doc. 22 at 6 (quoting *Fireman's Fund*, 149 Ariz. at 179)). The first half of this assertion is accurate. The parties *agree* that § 28-4010 was intended to create conclusive presumptions as to which policy is primary whenever two or more policies are applicable to cover a loss. (Docs. 22 at 6–7 & 25 at 3). That said, the second half of this assertion is misleading to the extent it implies that § 28-4010 is only applicable where one of the named insureds is engaged in the automobile business. As noted above, this is only true in the realm of Section A, which requires one of the named insureds to be "engaged in the business of . . . motor vehicles." § 28-4010(A). In contrast, Section B contains no reference at all to the motor vehicle business and serves as the general priority rule whenever two or more policies are applicable to the same loss. *See* § 28-4010(B). In sum, Plaintiff is incorrect to assert that the statute is not applicable merely because Moe was not engaged in the motor vehicle business or because the loss does not "concern[] a vehicle that is being serviced, road tested, etc."[5] (Doc. 22 at 7).

Plaintiff contends that a second "primary concern" of § 28-4010 is to establish priorities "when there is a loss where an individual is using or occupying a non-owned vehicle." (*Id.*). Plaintiff argues that this concern is not raised in this case because Moe "purchased two different automobile liability policies for her own vehicles" and was

---

[5] The Court recognizes that Plaintiff is directly citing *Fireman's Fund* when it states that the statute was enacted "to create conclusive presumptions as to 'which policy provides primary and which excess coverage when two or more policies cover the same motor vehicle loss and the named insured in one of the policies is engaged in the automobile business.'" (Doc. 22 at 6 (quoting *Fireman's Fund*, 149 Ariz. at 179)). However, *Fireman's Fund* dealt solely with Section A. *See Fireman's Fund*, 149 Ariz. at 181 ("It is undisputed that Cummings is in the business of selling and repairing automobiles and thus is within the ambit of [§ 28–4010](A). Therefore, the conclusive presumptions of subsection (A) are triggered."). *Fireman's Fund* simply cannot be read to hold that *Section B* requires the insured's engagement in the motor vehicle business.

driving her own vehicle at the time of the accident. (*Id.*). Plaintiff relies on *American Family* for its finding that Section B "was enacted to address the conflict between policies that cover an insured individual using a non-owned vehicle and policies that insure the vehicle and whoever is driving it." (*Id.* at 6–7 (quoting *Am. Family Mut. Ins. Co. v. Cont'l Cas. Co.*, 200 Ariz. 119, 122 (Ct. App. 2001))). The Court is again unpersuaded. While it may be true that Section B was enacted to address conflicts involving non-owned vehicles, this is not the same as Section B being enacted *for the sole purpose* of addressing such conflicts. *American Family* recognizes the former but does not hold the latter. Moreover, the express language of § 28-4010(B) does not contain any requirement that the insured be using a non-owned vehicle for the statute to apply. *See Bither v. Country Mut. Ins. Co.*, 226 Ariz. 198, 200 (Ct. App. 2010) ("The best indication of legislative intent is the plain language of the statute."). Rather, Section B is simply concerned with resolving the conflict that arises where two separate policies are implicated by the same occurrence. The mere fact that courts in some cases have applied § 28-4010 to situations involving the insured's use of a non-owned vehicle does not necessarily mean that the statute was intended to *only* apply to such situations. Plaintiff fails to cite to any definitive legal authority supporting such a narrowing of the statute's reach.

Finally, Plaintiff relies on *Jackson* for its discussion of the legislative intent behind § 28-4010. (Doc. 22 at 8–9). Like here, *Jackson* involved two separate insurance policies covering the same person. *Jackson v. Nationwide Mut. Ins. Co.*, 228 Ariz. 197, 198 (Ct. App. 2011). Unlike here, the insured in *Jackson* was a garage owner engaged in the motor vehicle business. *Id.* The appellant in *Jackson*—who was injured when an uninsured motorist struck his vehicle while he was riding in the passenger seat—argued that § 28-4010(A)(1) applied and required that *both* of the garage owner's policies were primary, given that the vehicle was being operated "by a person engaged in" the business. *Id.* at 201. The court rejected the argument, finding that "nothing in the plain language of § 28-4010 [] suggests the legislature intended the provision to apply to determine priority between two policies issued to the same garage owner." *Id.* at 202. "Rather, the conclusive

presumptions of § 28-4010 were intended 'to place primary liability on the party who is most responsible for the loss and thus encourage the negligent party to use due care.'" *Id.* (quoting *John Deere*, 175 Ariz. at 218). The court found that "[t]hese considerations would not be served where both policies are issued to the same party 'engaged in the business of . . . repairing . . . motor vehicles.'" *Id.* (quoting § 28-4010(A)).

At first glance, *Jackson* appears highly relevant to the present action because both cases involve a priority dispute between two insurance policies issued to the *same person*. Indeed, Plaintiff argues that this Court should reject application of § 28-4010 for the same reason that *Jackson* did. (Doc. 22 at 9). Specifically, Plaintiff asserts that *Jackson* "made clear that the statutory intent was to resolve a conflict in a situation involving two different policies, issued to two different parties, and *not* to a situation involving two policies purchased by and issued to the same individual." (*Id.*). Plaintiff further asserts that "[t]his is also not a situation where there is an intent to place primary responsibility on the negligent party," but rather that "[t]his is simply a situation where the insured (Moe) has paid premiums for UIM coverage under two different policies [that both] apply here." (*Id.*).

The Court remains unpersuaded. *Jackson* dealt with Section A (the exception) rather than Section B (the general rule). This distinction is significant, and the Court rejects Plaintiff's attempts to sweep it under the rug. Where two or more policies cover the same loss, the general rule for determining which is primary and which is excess is simple: "the primary policy is the one which describes and rates the vehicle as 'owned.'" *John Deere*, 175 Ariz. at 216. The legislative intent behind the general rule is also simple: "[t]he statute does no more than determine which carrier is excess and which is primary when two separate policies apply." *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 325 (1989). Where two or more policies cover the same loss *and one of them covers a named insured engaged in the business of motor vehicles*, the exception to the general rule applies. When working under the exception, determining which policy is primary and which is excess requires consideration of who was operating the motor vehicle and whether that individual was engaged in the motor vehicle business. The legislative intent behind the

9

exception is more complicated. *See John Deere*, 175 Ariz. at 216–18 (noting public policy of "placing primary liability on the party who is most responsible for the loss and thus encouraging the negligent party to use due care" and otherwise discussing legislative intent behind Section A).

In sum, the Court sees no reason why the general rule for priority determination—set forth in § 28-4010(B)—should not apply. Plaintiff's attempts to argue statutory intent are unsupported and do little more than muddy the waters in an otherwise straightforward case. Both Plaintiff and Defendant's policies covered Moe's loss. Pursuant to § 28-4010(B), Plaintiff's policy is primary because it describes and rates the Yamaha. Defendant's policy, on the other hand, is excess because it does *not* describe and rate the Yamaha. Given that § 28-4010(B) applies and resolves the priority dispute, the Court need not address the parties' other arguments, particularly those related to interpretation and application of the parties' policies.

### IV.  CONCLUSION

In sum, this Court holds that A.R.S. § 28-4010(B) applies, Plaintiff's UIM coverage is primary, and Defendant's UIM coverage is excess. Defendant is not liable for any amount to Plaintiff unless and until Plaintiff's UIM policy is maxed out. Accordingly,

**IT IS ORDERED** that Defendant Allstate Fire and Casualty Insurance Company's Motion for Summary Judgment (Doc. 20) is **granted**. Plaintiff's sole claim for equitable contribution (Count I) is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff Auto-Owners Insurance Company's Cross Motion for Summary Judgment (Doc. 22) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment** and **terminate** this action accordingly.

Dated this 28th day of July, 2023.

Honorable Steven P. Logan
United States District Judge